## Commonwealth v. Garrett

*Joseph J. Nelson,* Assistant District Attorney, for Commonwealth.

*Joseph P. Valentino,* for defendant.

STRANAHAN, P. J., June 22, 1970.—And now, June 4, 1970, this matter having come before the court for a hearing on a motion to suppress evidence and quash an indictment, the court makes the following findings of fact:

1. That on May 30, 1969, Wilburt R. Garrett was in the Bashline Hospital and that about 4:10 p.m., after surgery had been performed upon him by Doctors Groom and White, the medical technician was given two tubes of blood with defendant's name written thereon, one tube of which she placed in the refrigerator and the other tube she used for cross-matching purposes;

2. That on May 30, 1969, the Pennsylvania State Police had left a message requesting a blood alcohol count. This message was received by the medical technician on the evening of May 30th and she passed this information on to Dr. Frederick Raisch, the pathologist at the Bashline Hospital;

3. The blood in the tubes was drawn by Dr. Groom;

4. That on May 30, 1969, defendant, together with Frank Kamerer, was working for Mr. Segaty, hauling garbage in West Middlesex and New Wilmington. During the noon hour they had a sandwich and a bottle of beer and in midafternoon they went to the hotel at No. 5 Mine where they had beer to drink;

5. Defendant started home, driving his car and being the only person in the car, it was then between 3:30 and 4 p.m. A short time thereafter, Mr. Kamerer followed in his car and came upon an automobile accident which involved the Garrett car and automobile of Mr. Wherry;

6. During the course of the afternoon, Mr. Wilburt R. Garrett drove the garbage truck as a part of his work and drove it in a satisfactory manner;

7. It is about four miles from the hotel at No. 5 Mine to the place of the accident;

8. Trooper Patrick McHenry, of the Pennsylvania State Police, was assigned to investigate the accident at about 3:25 p.m., and he proceeded to the intersection where the accident occurred and observed both the Garrett and Wherry automobiles;

9. He searched the Garrett car and in doing so smelled the odor of alcohol, although there was no evidence of broken bottles, or other evidence of anything spilled in the car. At that time, he interviewed Mr. Kamerer who said that defendant Garrett was celebrating because he was getting married the next day and that he had been drinking beer. An investi-

gation of the scene indicated 137 feet of skid marks leading to the apparent point of impact;

10. Trooper McHenry received, on or about August 4, 1969, a report from Dr. Raisch indicating that the alcoholic content of Garrett's blood at the time of the testing was .12 of a percent. The trooper then having received that information filed criminal charges against defendant;

11. There was an eyewitness, Wimer, who said that he had seen defendant prior to the accident and had seen the accident occur; defendant was not going too fast and that Mr. Wherry had turned in front of him. The accident referred to above occurred at about 3:15 p.m.;

12. Mr. Kamerer testified that he had been at the hotel and he had observed defendant leave, driving his car in a normal manner;

13. There were two tubes of blood drawn from defendant, which is a standard hospital procedure and that one tube was used for the purpose of crossmatching, the other tube was placed in the refrigerator. The original taking of the two tubes was not done at the request of the Pennsylvania State Police. However, after the blood had been taken, the police then requested the blood alcohol test made of it.

## CONCLUSIONS OF LAW

This case appears to be controlled, at least in part, by Commonwealth v. Gordon, 431 Pa. 512 (1968). In this case, the police officers obtained a blood sample which had already been withdrawn from defendant and used that blood sample to make a comparison with blood on a paper bag which was found at the scene of the murder. In this case, the court distinguishes Schmerber v. California, 384 U. S. 757, by the fact that the blood was taken from the accused at the direction of the police in the Schmerber case

while in the Gordon case the blood had already been extracted and the extraction had not been performed at the direction or request of the police. Since the extraction had been made by a hospital employe purely for medical reasons, and any police contact occurred with hospital employes involved, the police were in no way connected with the extraction and merely received from the hospital a sample of blood already on hand and extracted for proper purposes.

Under these circumstances, the court felt in Commonwealth v. Gordon, supra, that evidence obtained from blood comparisons was properly admissible.

We conclude that the factual situation in the present case is similar, since the two tubes of blood had been drawn during the course of surgery that was being performed on defendant, and the purpose of the drawing of the blood was not for the use by the police officers nor was it done at the request of the police. After the police arrived, they requested that the hospital pathologist perform certain tests in order to determine the alcoholic content of the blood. It is the result of these tests that defendant now wishes to suppress.

We hold that there was not an unreasonable search and seizure, since the blood had already been withdrawn and was being used by the hospital for medical purposes.

The second reason that defendant requests that the results of the blood tests be suppressed is that the blood used in the testing was taken some two hours after defendant was last seen driving his automobile.

As we have pointed out before in Commonwealth v. Welker, December Sess., 1968, no. 115, we believe that this is a question of evidence rather than a question of whether defendant has been denied any constitutional right.

Rule 323 of the Rules of Criminal Procedure, dealing with the suppression of evidence, provides, in paragraph (a):

"The defendant or his attorney may make application to the court to suppress any evidence alleged to have been obtained in violation of the defendant's constitutional rights."

While it may be that because of the lapse of time the results of the test are not admissible, we believe that this is a question of evidence that does not involve defendant's constitutional rights.

Since it has been decided that the evidence may not be suppressed here, the court need not rule on the question of whether a motion to quash the indictment is proper under the circumstances of this particular case.

### ORDER

And now, June 22, 1970, defendant's motion to suppress is refused and the motion to quash the indictment is also refused.